IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ABIGAIL ACORN and WENDALL MALIC III,[1] | § § § | No. 148, 2019 |
| Respondents Below, Appellants, | § § § | |
| v. | § § | Court Below–Family Court of the State of Delaware |
| | § | |
| SETH LAYMEN and LAURA LAYMEN, | § § § | File No. 17-09-02TS |
| | § | Petition No. 17-28003 |
| Petitioners Below, Appellees. | § § | |

Submitted: August 21, 2019
Decided: October 28, 2019

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

## **ORDER**

After careful consideration of the appellants' brief filed under Supreme Court Rule 26.1(c), their attorneys' motions to withdraw, the appellees' response, and the Child Attorney's response, it appears to the Court that:

(1) By order dated March 5, 2019, the Family Court terminated the parental rights of the appellants, Abigail Acorn ("the Mother") and Wendall Malic III ("the Father") (collectively, "the Parents"), with respect to their children—a girl, born in 2013, and a boy, born in 2015 ("the Children").

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

(2) The Mother's and the Father's appointed counsel on appeal have filed a joint opening brief and motions to withdraw pursuant to Supreme Court Rule 26.1(c). Counsel assert that they have reviewed the record and have determined that no arguable claim for appeal exists. Counsel informed the Parents of the provisions of Rule 26.1(c) and provided them with copies of the motion to withdraw and the accompanying brief. Counsel submitted the Parents' concerns as "Appellants' Points" in their brief on appeal. The appellees, Seth Laymen and Laura Laymen, and the Child's Attorney have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) In April of 2015, the Division of Family Services ("DFS") opened an investigation into the Parents after receiving reports that they were using heroin and did not have adequate food for the Children in the hotel room where they were living. DFS referred the Parents to treatment service providers and directed them to update DFS about their progress. The Parents failed to do so. Two months later, the Parents were arrested and charged with various offenses stemming from their alleged illegal occupation of a residence. Following their arrest, the Family Court awarded DFS emergency custody of the Children. DFS immediately placed the Children with the

2

Laymens. At the time, the Children were approximately nineteen months old and four months old.

(4) After DFS filed its dependency and neglect petition, the mandated hearings ensued.[2] A dispositional hearing was held on July 21, 2015, and the Family Court approved case plans developed by DFS to facilitate the reunification of the Parents with the Children. The approved case plans for the Mother and the Father required that they: (i) receive substance abuse treatment, (ii) obtain and maintain employment and demonstrate an ability to provide for the Children financially, (iii) obtain and secure stable housing, and (iv) receive mental health treatment. The Father's approved case plan also required that he attend a parenting workshop and build a support network of family and friends. The case plans ensured the Mother and the Father would have visits with the Children twice a week for two hours.

(5) Over the next nine months, the court held a series of hearings to review the progress the Parents had made toward reunification. In a series of orders following the review hearings, the Family Court found that the Children remained dependent in the Parents' care due to the Parents' ongoing

---

[2] When a child is removed from home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. R. 212-219.

struggle to obtain stable housing, steady employment, and reliable transportation. On May 10, 2019, the court held a permanency hearing. At that time, the Children had been residing with the Laymens for approximately eleven months. With the Parents' agreement, the permanency goal was changed from reunification to the concurrent goals of guardianship and termination of parental rights.

(6) After the goal change, the Father's sister, a resident of North Carolina, filed a petition for guardianship of the Children. The Laymens also filed a petition for guardianship. After a hearing on the competing petitions for guardianship, the court found that the Children remained dependent in Mother and Father's care, and that it was in the Children's best interests that they continue to reside with the Laymens. Accordingly, the court denied the Father's sister's petition and awarded guardianship of the Children to the Laymens in March 2017. The Father's sister did not appeal the denial of her petition.

(7) On September 7, 2017, the Laymens filed a filed a petition ("the TPR petition") seeking to terminate the Parents' parental rights on the basis of their failure to plan for the Children's needs.[3] The Laymens later amended the TPR petition to include additional grounds for the termination of parental

---

[3] The Laymens also filed a petition to adopt the Children.

4

rights, specifically: (i) abandonment (intentional and unintentional), (ii) chronic abuse, and (iii) unexplained serious physical injury resulting from the conduct or neglect of the Parents. The Parents opposed the Laymens' petition.

(8) The Family Court held a hearing on the TPR petition over two days in November 2018. The Parents appeared, represented by counsel. The Family Court heard testimony from the Mother, the Father, the Children's foster care and adoption social worker, a licensed child psychologist, Mr. Laymen, Mrs. Laymen, the Father's sister, the Father's aunt, and the Father's grandmother. The testimony reflected that the Parents had been clean and sober since December 2015. However, the testimony also reflected that: (i) the Parents continued to struggle with obtaining and maintaining stable housing, (ii) the Parents had failed to address their mental health issues until after the TPR petition had been filed and more than two years after the Children were removed from their custody, (iii) the Parents had not obtained financial stability, (iv) the Parents had visitation with the Children for only one hour once a month since the Laymens had been awarded guardianship in March 2017, and (iv) the Parents could not immediately resume custody and financial support of the Children because they had not filed a motion to rescind the guardianship. The Family Court also heard evidence that the Children experienced acute anxiety when placed in situations where they

5

feared the Laymens would abandon them. Importantly, the Family Court also heard from the child psychologist who testified that the Children were very bonded to the Laymen family and that a change in placement would be very disruptive to the Children's emotional development.

(9) Following the hearing, the Family Court issued a written decision dated March 5, 2019. The court rejected the Laymens' arguments that termination of the Parents' rights was appropriate due to abandonment, chronic abuse, or serious injury. However, the Family Court found clear and convincing evidence that the Parents had failed to plan adequately for the responsibility of raising the Children. The court found further that, even if the Parents were financially secure and able to provide the Children with stable housing and other basic needs, the Parents would struggle to fulfill their parental responsibility to meet the Children's emotional needs. The Family Court noted that the Children had been residing with the Laymens for nearly four years and, after balancing the best interests factors under 13 *Del. C.* § 722, the court concluded that it was in their best interests to terminate the Parents' parental rights.

(10) On appellate review of a termination of parental rights, this Court is required to consider the facts and the law as well as the inferences and

6

deductions made by the Family Court.[4] We review legal rulings *de novo*.[5] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly wrong.[6] If the trial judge has correctly applied the law, our review is limited to abuse of discretion.[7]

(11) The statutory procedure for terminating parental rights requires two separate inquires.[8] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[9] If the Family Court finds a statutory basis for termination of parental rights, the court must determine whether, considering the factors enumerated at 13 *Del. C.* § 722, severing parental rights is in the best interests of the child.[10] It is incumbent on the petitioner—the Laymens in this case—to prove by clear and convincing evidence that there is a statutory basis for termination of parental rights and that the best interests analysis favors termination.[11]

---

[4] *Scott v. DSCYF*, 2012 WL 605700, at *1 (Feb. 27, 2012).
[5] *Wilson v. DFS*, 988 A.2d 435, 440 (Del. 2010).
[6] *Id.*
[7] *Powell v. DSCYF*, 963 A.2d 724, 731 (Del. 2008).
[8] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[9] *Id.* at 537. *See also* 13 *Del. C.* § 1103(a) (listing the grounds for termination of parental rights).
[10] 13 *Del. C.* § 722(a) (listing the factors to be considered when determining the best interest of the child).
[11] *Powell*, 963 A.2d at 731.

(12) On appeal, the Parents argue that: (i) the Family Court did not consider the Parents' wishes when it denied Father's sister's petition for guardianship; (ii) the record reflects that Parents had, in fact, addressed the elements of their case plans; and (iii) it was not in the Children's best interests to terminate the Parents' parental rights. Parents also make new claims of stable housing, employment, the existence of a support system, mental health treatment, and reliable transportation.

(13) After careful consideration of the parties' respective positions on appeal and a thorough review of the record, the Court has determined this appeal should be affirmed on the basis of and for the reasons assigned by the Family Court in its March 5, 2019 decision. We find no error in the Family Court's application of the law to the facts. The Family Court found clear and convincing evidence that the parents had failed to plan adequately for the Children's needs,[12] that the Children had resided with the Laymens in excess of one year,[13] that the Parents were incapable of discharging parental responsibilities,[14] and that termination of the Parents' parental rights was in the best interests of the Children.[15] Those conclusions are well-supported by

---

[12] 13 *Del. C.* § 1103(a)(5).
[13] 13 *Del. C.* § 1103(a)(5)b.1.
[14] 13 *Del. C.* § 1103(a)(5)b.2.
[15] 13 *Del. C.* § 1103(a); 13 *Del. C.* § 722(a).

the record. Because an appeal is heard on the evidence submitted to the trial court, we cannot consider Parents' new claims of financial stability and emotional support.[16] Also, this Court has no jurisdiction to consider the Parents' objection to the Family Court's denial of the Father's sister's petition for guardianship.[17]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motions to withdraw are moot.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice

---

[16] Del. Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."); *Delaware Elec. Coop., Inc. v. Duphily*, 703 A.2d 1202, 1206 (Del. 1997) ("It is a basic tenet of appellate practice that an appellate court reviews only matters considered in the first instance by a trial court. Parties are not free to advance arguments for the first time on appeal.").

[17] *Hughes v. DFS*, 836 A.2d 498, 506 (Del. 2003).